576

**STATE of Vermont v. Carleton C. SAHM, Jr.**

[682 A.2d 947]

No. 94-518

June 14, 1996. Defendant appeals from a sentence of twelve to fifteen years imposed for his conviction by jury of voluntary manslaughter. He claims that during the sentencing hearing the judge engaged in judicial fact finding contrary to the jury verdict, which effectively deprived defendant of his constitutional right to a jury trial, and violated his right to due process of law. Defendant also contends that the court's rationale for imposing the sentence was based upon material misinformation. He asks that his sentence be vacated and remanded for a new sentencing hearing. We affirm.

Carleton Sahm and Sharon Towne became romantically involved while living in the Syracuse, New York, area. After dating for approximately one year, Sharon moved with her children to Vermont to take a job with the Price Chopper grocery chain. Subsequently, her relationship with defendant deteriorated until Sharon stated that she wanted to end it. Sahm, however, continued to call and question her about her relationship with Bill Gemmer, a fellow employee, whom defendant later shot and killed.

Early on the morning of February 9, 1993, the day before the incident, defendant called Sharon at work, and an argument ensued. Defendant called again at 6:00 a.m., and Sharon told him she would call him back. When they spoke later, defendant was apologetic. He did not mention that he planned to come to Vermont.

That evening defendant went to his mother's house in New York and retrieved his hunting rifle. He then rented a car and drove to Burlington, Vermont, stopping on the way to purchase a box of ammunition. Defendant arrived in Burlington at about 11:30 p.m. and rented a room at the Econo Lodge.

The next morning, Bill Gemmer left work at approximately six. He and Sharon had agreed that he would pick her and her children up at home, drop the children off at school, and then take her to work. Gemmer had also made plans with his ex-wife to pick up his son for visitation.

As Gemmer and Towne drove towards the Price Chopper after dropping the children off at school, they passed defendant who was parked at a gas station buying coffee. Defendant followed them to the Price Chopper, loading the rifle with eight shells as he drove. Towne and Gemmer parked in the Price Chopper parking lot. Gemmer's ex-wife entered the parking lot at about the same time and removed decedent's two-year-old son from his child seat for the visitation transfer.

Defendant then pulled his car up to the Towne vehicle, and ordered her into the car with him. She responded by stating that she had to help transfer the child first, and that then she would go with him. Towne moved away from defendant's vehicle while Gemmer moved toward it, apparently intending to confront defendant. Towne testified that she did not witness any altercation. When she heard a shot, however, Towne began to run toward the front door of the Price Chopper. She heard more shots before she reached the store.

Several witnesses saw defendant turn and fire two shots in the direction of the Price Chopper. They testified that while he was shooting, defendant looked "pretty calm," and "taking his time when he was shooting at her." Another witness testified that he "took aim, he would shoot; take several more steps, take another shot." One of the bullets was discovered inside the store. The other hit a metal bumper in front of the door of the store and broke into fragments.

After the shooting, defendant got back into his car and drove away. He returned to his hotel room, made several telephone calls to his mother and to his place of employment in New York and eventually turned himself in to the police at approximately 11:30 that morning.

After a jury trial, which resulted in a conviction for voluntary manslaughter, the judge sentenced defendant to a minimum of twelve years and a maximum of fifteen. The sentence was to be split with twelve years served followed by three years' probation. This sentence falls within the range prescribed for a conviction of voluntary manslaughter. See 13 V.S.A. § 2304 ("A person who commits manslaughter shall be fined not more than $3,000.00, or imprisoned for not less than one year nor for more than 15 years, or both.").

During sentencing, the judge stated, "[W]e're not here because of a mistake or an accident. We are here because there was an intentional killing of another human being." The judge went on to acknowledge that "[t]he Court does not see the state's recommendation [for sentencing] as tantamount to a murder sentence, because that's not what it is. The Legislature has provided up to life in prison for murder, and that's not [what will be imposed.]" The judge saw the twelve-year sentence rendered as a "discount" from the fifteen-year maximum he was allowed to give under the statute. He explained that this "discount" is a "mitigating effect for the jumble of emotions that [we]re going on at th[e] time [of the killing,]" and reasoned that "the court cannot . . . find that a minimum of twelve years is not appropriate for the killing of another human being who was just minding his business, whose death was occasioned by someone who shows up looking for them with a gun."

Defendant's entire argument rests on a strained interpretation of isolated comments the court made during sentencing.

While explaining its rationale, the court stated that Gemmer was "minding his own business" and didn't "see [defendant] coming until the end." Defendant claims these statements contradicted the jury verdict of voluntary manslaughter, which necessarily rested on a finding that Gemmer provoked the shooting. The larger context of the court's statement belies this claim.

When read in its entirety, the court's statement simply points out that on the day of the shooting, Gemmer was going about his normal routine, while defendant, in contrast, had driven hundreds of miles to find his estranged girlfriend, bringing along a rifle and purchasing ammunition on the way. The court acknowledged that the jury "did consider some responsibility on Mr. Gemmer's part," and found that "in all respects . . . *til possibly the very end* this was all initiated by [defendant]." (Emphasis added.) Thus, contrary to defendant's assertions, the court did not base its sentence on a finding that Gemmer played no role in the shooting. The findings and the sentence are consistent with a jury verdict of voluntary manslaughter. See *State v. Thompson*, 150 Vt. 640, 645, 556 A.2d 95, 99 (1989) (appropriate and proper for court to consider circumstances of offense in sentencing).

*Affirmed.*